```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
FANGRUI HUANG, on behalf of himself
and others similarly situated,                                   NOT FOR PUBLICATION

                        Plaintiff,                               MEMORANDUM AND ORDER
                                                                 17-CV-3181 (PKC)(JO)
           - against-

GW OF FLUSHING I, INC.
           d/b/a GW Supermarket of Flushing 2,
DZH IMPORT & EXPORT, INC.,
LI HUI ZHANG
           a/k/a Lihui Zhang, and
SAILU PAN
           a/k/a Sai Lu Pan
           a/k/a Sai Pan Lu,

                        Defendants.
-----------------------------------------------------------x
```
PAMELA K. CHEN, United States District Judge:

Plaintiff Fangrui Huang ("Plaintiff" or "Huang") brings this action against Defendants GW of Flushing I, Inc. d/b/a GW Supermarket of Flushing 2 ("GW"), DZH Import & Export Inc. ("DZH"), Li Hui Zhang a/k/a Lihui Zhang, and Sailu Pan a/k/a Sai Lu Pan and Sai Pan Lu, (collectively, "Defendants"), for alleged minimum wage and unpaid overtime violations under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), as well as violations of time-of-hire wage notice and wage statement requirements under the NYLL. Pending before the Court is Defendants' motion to dismiss the Second Amended Complaint ("SAC") (Dkt. 94) in its entirety, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and Defendants' motion to strike Paragraphs 29, 30, and 31 of the SAC pursuant to Fed. R. Civ. P. 12(f). (Dkt. 98.) For the reasons stated herein, Defendants' motion to dismiss and motion to strike are each granted in part, and denied in part.

**BACKGROUND**

**I.    Relevant Facts[1]**

Defendants employed Huang as a packer at GW Supermarket ("GW"), located at 137-61 Northern Boulevard, Flushing, New York 11354, from approximately January 1, 2011 until February 18, 2017. (SAC, ¶ 43.) At all times during Huang's employment, Defendants operated GW and DZH operated GW's corporate office, located at 1300 Metropolitan Avenue, Brooklyn, New York 11237. (*Id.*, ¶¶ 9, 14.) Individual Defendants, Li Hui Zhang and Sailu Pan, were officers, directors, managers, and/or majority shareholders or owners of GW and DZH. (*Id.*, ¶ 18.)

At all times during his employment, Huang was paid at a base rate of $11 per hour for the first 40 hours he worked each week ("Base Rate") and at an overtime rate of $16.50 per hour for time he worked in excess of 40 hours each week ("OT Rate"). (*Id.*, ¶¶ 50-51.) Huang never received a written notice in his primary language, Chinese, indicating his employment details at any point during his employment. (*Id.*, ¶ 44.)

Huang typically worked 48 hours per week in accordance with his regular work schedule. (*Id.*, ¶ 45.) In addition, Huang worked an average of 1.5 hours each week in excess of his regular work schedule. (SAC, ¶ 47.) This excess time was not recorded on Huang's daily punch cards, and Huang's pay statements only indicated that he worked 48 hours each week.[2] (*Id.*, ¶¶ 47, 51.) Although GW paid Huang for 40 hours each week at the Base Rate and eight hours each week at

---

[1] In deciding a motion to dismiss under Rule 12(b)(6) or Rule 12(b)(1), the Court must accept as true the allegations in the complaint. *Littlejohn v. City of N.Y.,* 795 F.3d 297, 306-07 (2d Cir. 2015) (Rule 12(b)(6)); *Katz v. Donna Karan Co., L.L.C.,* 872 F.3d 114, 119 (2d Cir. 2017) (Rule 12(b)(1)). The facts in this section are taken from Plaintiff's SAC (Dkt. 94).

[2] The Court finds that the allegation in Paragraph 51 of the SAC that Plaintiff received pay statements indicating that he worked 48 hours in a week is consistent with Paragraph 57 of the SAC, which states that Plaintiff did not receive pay statements that listed all of the required information under the NYLL. (*See id.*, ¶¶ 51, 57.)

the OT Rate, he was not compensated for the additional 1.5 hours he worked each week in excess of his regular work schedule. (*Id.*, ¶¶ 51, 56.) On occasion, GW compensated Huang in cash for the additional time he worked beyond his regular work schedule during the prior week. (*Id.*, ¶ 54.) However, GW did not calculate these extra cash payments at the OT Rate. (*Id.*)

## II.     Procedural History

Plaintiff filed the Complaint in this action on May 25, 2017 against 18 defendants, most of them grocery stores located outside of New York at which Plaintiff had never worked. The original Complaint alleged two counts of FLSA violations, one count of an Internal Revenue Code violation, four counts of NYLL violations, one count of a New York General Business Law violation, two counts of Massachusetts General Law violations, and two counts of Maryland Labor and Employment Law violations. (Dkt. 1, ¶¶ 122-79.) On November 16, 2017, the Court granted Defendants' motion for a pre-motion conference. (Dkt. 55; November 16, 2017 Docket Order.) After the December 1, 2017 pre-motion conference, the Court ordered Plaintiff to file an amended complaint by January 5, 2018. (Dkt. 65; December 1, 2017 Minute Entry.)

Plaintiff filed the First Amended Complaint ("FAC") on January 5, 2018. (Dkt. 69.) Defendants served a motion to dismiss the FAC on February 19, 2018, as well as a request for a second pre-motion conference on April 1, 2018. (Dkts. 82, 85.) A second pre-motion conference was held on April 24, 2018, in which the Court granted in part and denied in part Defendants' motion to dismiss, dismissing individual defendant Maio Kun Fang, all of the out-of-state defendants, and all corporate defendants, except GW of Flushing I, Inc., GW Supermarket of Main Street, Inc. d/b/a GW Supermarket of Flushing 3, and DZH Import & Export, Inc., for lack of Article III standing. (April 24, 2018 Minute Order Entry.) The Court also dismissed Counts Seven through Twelve of the FAC, as they alleged claims against the dismissed out-of-state defendants.

(*Id.*)  The Court then directed the Plaintiff to file a second amended complaint conforming to the Court's dismissal of defendants and adding putative-plaintiff Xiang Ming He ("Ming He"), along with all necessary factual allegations relating to Ming He[3] and Huang.  (*Id.*)

In accordance with the Court's April 24, 2018 Order, Plaintiff filed the SAC on May 24, 2018, (Dkt. 93) and filed an amended, corrected version of the SAC on May 29, 2018.  (Dkt. 94.)  On June 24, 2018, Defendants served an omnibus motion to dismiss all of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and to strike Paragraphs 29, 30, and 31 of the SAC pursuant to Fed. R. Civ. P. 12(f). ("Defs.' Mot. To Dismiss", Dkt. 98; Defendants' Memorandum in Support, "Defs.' Br.", Dkt. 98-1.)  Plaintiff served a Memorandum in Opposition on July 23, 2018 in response.  ("Pl.'s Br.", Dkt. 99.)  Defendants filed a Reply, and the motion was fully briefed on July 30, 2018.  (Dkt. 100.)

## STANDARDS OF REVIEW

### I. Federal Rule of Civil Procedure 12(b)(1)

A claim must be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  To survive a motion to dismiss for lack of standing, the "plaintiff must allege "facts that affirmatively and plausibly suggest that it has standing to sue." *Reyes v. Sofia Fabulous Pizza Corp.*, No. 13-CV-7549 (LAK)(JCF), 2014 WL 12768922, at *2 (S.D.N.Y. Apr. 7, 2014), *report and recommendation adopted*, 2014 WL 1744254 (S.D.N.Y. Apr. 24, 2014).  To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is

---

[3] Although the Court granted Huang leave to add Ming He as a plaintiff (*see* April 24, 2018 Minute Order Entry), Huang never added factual allegations on behalf of Ming He, or named him as a plaintiff, in the SAC.  Thus, the Court does not consider Ming He to be a plaintiff in this case.

4

likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992)). An injury in fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560).

A facial challenge to Article III standing under Rule 12(b)(1) may be "'based solely on the allegations of the complaint or the complaint and exhibits attached'," but in the event of a fact-based jurisdictional challenge under Rule 12(b)(1), extrinsic materials submitted by both parties beyond the allegations in the complaint may be considered. *Katz,* 872 F.3d at 119 (quoting *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016)). In such cases, however, courts may only consider extrinsic materials outside the complaint to examine jurisdictional facts. *Azeez v. Ramaiah*, No. 14-CV-5623 (PAE), 2015 WL 1637871, at *2 (S.D.N.Y. Apr. 9, 2015) (the "extrinsic evidence must pertain to jurisdictional facts, …[and] not [to] the merits of the plaintiff's case."); *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (" '[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits[.]' ") (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)). "[T]he party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon*, 752 F.3d at 243 (quoting *Makarova*, 201 F.3d at 113); *accord, Katz,* 872 F.3d at 119.

II. **Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

### III.     Federal Rule of Civil Procedure 12(f)

Fed. R. Civ. P. 12(f) provides that a Court "may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike 'are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation.'" *Crespo v. New York City Transit Auth.*, No. 01-CV-0671 (ILG), 2002 WL 398805, at *11 (E.D.N.Y. Jan. 7, 2002) (quoting *Lennon v. Seaman*, 63 F. Supp. 2d 428, 446 (S.D.N.Y. 1999)); *see OTG Brands, LLC v. Walgreen Co.*, No. 13-CV-9066 (ALC), 2015 WL 1499559, at *5 (S.D.N.Y. Mar. 31, 2015) (a party seeking to strike allegations must show that evidence in support of the allegation would be inadmissible, the allegations have no bearing on relevant issues, and permitting the allegations to stand "would result in prejudice to the movant." (internal quotation marks and citation omitted)). "In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d

6

Cir. 1976). As the Second Circuit has noted, "courts should not tamper with the pleadings unless there is a strong reason for so doing." *Id.* Furthermore, "[s]imply because a claim is dismissed . . . does not mean that allegations in support of that claim may as a matter of course be struck as immaterial, impertinent, or scandalous." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 417 (S.D.N.Y. 2012).

## DISCUSSION

In the SAC, Plaintiff asserts claims against all Defendants for: (1) minimum wage violations under the FLSA ("Count I"); (2) unpaid overtime violations under the FLSA ("Count II"); (3) minimum wage violations under the NYLL ("Count III"); (4) unpaid overtime violations under the NYLL ("Count IV"); (5) failure to provide a time-of-hire wage notice under the NYLL ("Count V"); and (6) failure to furnish detailed wage statements under the NYLL ("Count VI"). (SAC, ¶¶ 68-97.) Defendants move to dismiss all claims for lack of standing and for failure to state a claim upon which relief can be granted. (Defs.' Mot. To Dismiss, ¶¶ 1-2.) Defendants also move to strike Paragraphs 29, 30, and 31 of the SAC for failure to comply with the Court's April 24, 2018 Minute Order. (*Id.*, ¶ 3.) The Court addresses each of Defendants' motions in turn.

**I.      Defendants' Rule 12(b)(1) Motion**

Although Defendants argue that Plaintiff's claims for violations of minimum wage, overtime compensation, time-of-hire wage notice, and wage statement requirements under the FLSA and NYLL should all be dismissed on jurisdictional grounds under Rule 12(b)(1)—presumably to take advantage of the rule permitting consideration of extrinsic evidence with respect to "jurisdictional" issues—this is simply incorrect. Defendants' Rule 12(b)(1) arguments are not, in fact, based on jurisdictional defects in the SAC, but rather on Plaintiff's alleged failure to state claims under Rule 12(b)(6). *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp.

7

3d 232, 241 (S.D.N.Y. 2015) (quoting *Da Silva v. Kinsho International Corporation,* 229 F.3d 358, 361 (2d Cir. 2000)) (denying 12(b)(1) motion to dismiss FLSA underpayment claim based on purported FLSA exemption: "[c]ourt decisions often obscure the issue by stating that the court is dismissing 'for lack of jurisdiction' when some threshold fact has not been established, without explicitly considering whether the dismissal should be for lack of subject matter jurisdiction or for failure to state a claim."); *see also Saca v. Dav-El Reservation Sys., Inc.,* 600 F. Supp. 2d 483, 485-87 (E.D.N.Y. 2009) (defendant claiming exemption under FLSA challenges the merits of the FLSA claim rather than subject-matter jurisdiction) (quoting *Da Silva,* 229 F. 3d. at 361 ('[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as a predicate for relief—a merits-related determination.' ")); *Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, No. 08-CV-1686 (NGG) (RML), 2009 WL 1813230, at *2 (E.D.N.Y. June 25, 2009) (same, quoting *Da Silva*, 229 F. 3d. at 361).

      The Court, therefore, denies Defendants' Rule 12(b)(1) motion in its entirety and disregards the extrinsic evidence Defendants proffer in support of that motion. The Court instead considers only Defendants' Rule 12(b)(6) motion, based on an analysis of whether the allegations in the SAC, accepted as true, are sufficient to state Plaintiff's FLSA and NYLL claims. *See Phifer v. City of NY*, 289 F.3d 49, 55 (2d Cir. 2002) (court may consider extrinsic materials outside of the complaint if the defendants' challenge is to subject matter jurisdiction, but not to "examine…the merits of [the] claims"); *Azeez*, 2015 WL 1637871, at *2 ("extrinsic evidence must pertain to jurisdictional facts, . . . [and] not [to] the merits of the plaintiff's case").

## II. Defendants' Rule 12(b)(6) Motion

### A. FLSA and NYLL Minimum Wage Claims

Plaintiff alleges that Defendants violated the FLSA and NYLL by failing to pay Plaintiff statutory minimum wages. (SAC, Counts I and III, ¶¶ 69, 81.) The Court analyzes Plaintiff's minimum wage claim under both the FLSA and NYLL together, as the relevant provisions under "[t]he NYLL and the FLSA are analytically nearly identical." *Coley v. Vannguard Urban Improvement Ass'n, Inc.,* No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628, at *5 (E.D.N.Y. Mar. 27, 2018), *as amended* (Mar. 29, 2018) (internal quotation marks and citation omitted); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) (NYLL is the "state analogue" to the FLSA and "otherwise mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime").

Under Section 206 of the FLSA, "[t]o establish liability on a claim for underpayment of wages, 'a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work.'" *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 472 (S.D.N.Y. 2015) (quoting *Kuebel v. Black & Decker*, 643 F.3d 352, 362 (2d Cir. 2011)); 29 U.S.C. § 206(a). "In particular, an employee must be paid at least minimum wage." *Id.* (citing 29 U.S.C. § 206(a)). An employee cannot state a claim for a minimum wage violation "unless [his] average hourly wage falls below the federal minimum wage." *Lundy v. Catholic Health Sys. of Long Island, Inc.,* 711 F.3d 106, 115 (2d Cir. 2013). To determine whether an employee was compensated above the required federal minimum wage, the Court must calculate the employee's average hourly wage, which is determined: "by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually

9

worked by him in that workweek for which such compensation was paid." *Lopez-Serrano v. Rockmore,* 132 F. Supp. 3d 390, 402 (E.D.N.Y. 2015) (internal quotation marks and citation omitted); 29 CFR § 778.109.[4]

For the period in question, the federal minimum wage was $7.25 per hour and the New York State minimum wage for workers in New York City was $11 per hour. 29 U.S.C. § 206(a)(1)(C); NYLL § 652(1)(a)(i) (listing $11/hour as New York City large employer state mandated minimum wage as of December 31, 2016); *Armata v. Unique Cleaning Servs., LLC*, No. 13-CV-3625 (DLI) (RER), 2015 WL 12645527, at *5 n.5 (E.D.N.Y. Aug. 27, 2015) (federal minimum wage); 29 U.S.C.A. § 206(a)(1)(c) (listing federally mandated minimum wage at $7.25/hour). Therefore, to state a FLSA minimum wage claim, Plaintiff must prove that, in a given week, the total amount he was paid divided by the number of hours he worked was less than $7.25 per hour, and to state a NYLL minimum wage claim, Plaintiff must show that his average hourly pay was less than $11. *Lopez-Serrano,* 132 F. Supp. 3d at 402; 29 CFR § 778.109; *Thind*, 2015 WL 4554252, at *5.

Applying these standards, the Court finds that the SAC fails to state a minimum wage claim under either the FLSA or NYLL. As discussed, the SAC alleges that Plaintiff worked 40 hours each week at a Base Rate of $11/hour, eight hours each week at an OT Rate of $16.50 hour, and an additional 1.5 hours on average each week for only occasional (unspecified) cash compensation. Thus, Plaintiff's average total hours each week were 49.5, for which he was paid a total of at least

---

[4] The same calculation, averaging the total pay received against the total hours worked, is used to determine whether violations of minimum wage occurred under the NYLL. *See Thind v. Healthfirst Mgmt. Servs., LLC*, No. 14-CV-9539 (LGS), 2015 WL 4554252, at *5 (S.D.N.Y. July 29, 2015).

$572.[5] This results in an average hourly rate of $11.55/hour, which is above both the federal and state minimum wage rates. C*ruz*, 116 F. Supp. 3d at 243 (finding no minimum wage claim where plaintiff's "straight hourly rate was above the minimum wage when accounting for the hours for which he was not paid").

Accordingly, because Plaintiff has failed to sufficiently allege minimum wage claims under the FLSA and NYLL, Counts I and III of the SAC are dismissed.

### B. FLSA and NYLL Unpaid Overtime Compensation Claims

Plaintiff alleges that Defendants violated the FLSA and NYLL by failing to pay Plaintiff required overtime wages for the time he worked in excess of 40 hours each week. (SAC, Counts II and IV, ¶¶ 74, 87.) According to the SAC, Plaintiff worked on average 9.5 hours of overtime each week; he was compensated for the first eight hours of overtime at the OT Rate of $16.50, but only occasionally paid at an unspecified rate less than the OT rate for the additional 1.5 hours of overtime he worked each week.

As an initial matter, the fact that Plaintiff has no viable minimum wage claim does not preclude him from recovering for unpaid or underpaid overtime work. "It is firmly established that even employees who are paid in excess of the minimum wage may proceed under the FLSA if they do not receive time and a half for overtime." *Sobczak v. AWL Industries, Inc.*, 540 F. Supp. 2d 354, 357-58 (E.D.N.Y. 2007) (citing, *inter alia, Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 42 (1944) ("Even when wages exceed the minimum prescribed by Congress, the parties to the contract must respect the statutory policy of requiring the employer to pay one and one-half times the regular[] hourly rate for all hours actually worked in excess of 40.")).

---

[5] The $572 does not include the occasional payments of unspecified amounts that Plaintiff received.

11

Under both the FLSA and NYLL, employers are required to pay employees 1.5 times their regular rate for each hour worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1); NYLL § 663; *see also* N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (2011) (incorporating the FLSA definition of overtime into the NYLL). Here, Plaintiff has no overtime claim with respect to the first eight hours of overtime he worked each week, because, as Plaintiff himself states, he was paid $16.50/hour for those eight hours (SAC, ¶ 51), which is equal to 1.5 times his regular pay rate of $11/hour. However, the SAC also alleges, with sufficient detail, that Plaintiff worked an additional 1.5 hours on average per week beyond the first 48 hours and that he was only occasionally paid for this additional work at a rate below the OT rate. (*Id.,* ¶¶ 45-47, 52-55.) *Lundy*, 711 F.3d at 114 (to survive a Rule 12(b)(6) motion to dismiss on an overtime compensation claim, a plaintiff must "sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) (holding that a plaintiff must provide "sufficient detail about the length and frequency" of unpaid work in order to support "a reasonable inference" that he or she "worked more than forty hours in a given week."); *Dejesus v. HF Management Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (holding that while "not an invitation to provide an all-purpose pleading template alleging overtime in some or all workweeks," a plaintiff is not required "to keep careful records and plead . . . hours with mathematical precision," but may draw on "memory and experience" to provide complaints with "sufficiently developed factual allegations" to support the claim that he was denied overtime in violation of FLSA.)

Accordingly, Plaintiff's FLSA and NYLL overtime compensation claims in Counts II and IV will proceed, but only as to his claim of working an average of 1.5 hours beyond his 48 hours of work each week.

### C. NYLL Time-of-Hire Wage Notice Claim

Plaintiff also alleges that Defendants violated the NYLL because Plaintiff did not receive a time-of-hire wage notice when he was first hired or at any time during his employment. (SAC, Count V, ¶ 95.) The NYLL requires an employer to provide "his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring," a notice containing specific information regarding the individual's employment. NYLL § 195(1)(a).

Defendants argue that Plaintiff was provided with a time-of-hire wage notice at the time Plaintiff was hired, and submits such a notice, purportedly signed by the Plaintiff, in support of that argument. (Defs.' Br., Dkt. 98-1, at ECF 5; Dkt. 98-6, at ECF 2.) However, because the proffered notice pertains to the merits of Plaintiff's case, and not to any jurisdictional fact, the Court declines to consider it. *Azeez,* 2015 WL 1637871, at *2. To the extent Defendants argue that the Court should consider the proffered notice because it is "integral" to the SAC (Defs.' Br., at ECF 10 (citing *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010))), the Court disagrees. Plaintiff claims that Defendants never gave him any wage notice. (SAC, ¶ 95.) This allegation is the *opposite* of making the proffered wage notices "integral" to complaint; Plaintiff disputes their very existence or, at least, that they were ever provided to him. *DiFolco*, 622 F.3d at 111 (stating that in order to consider any documents as "integral" to a complaint, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document[s]").[6] Indeed, that is the issue to be determined through discovery and fact-finding, and not at the pleading stage.

---

[6] Even when the authenticity or accuracy of such notices are not disputed by the parties, courts in the Second Circuit have declined to consider such notices purportedly signed by the plaintiff as "integral" to the complaint; rather, such exhibits are more appropriately considered at

Accordingly, Plaintiff may proceed on Count V of the SAC.

### D.  NYLL Claim for Failure to Provide Wage Statements

Plaintiff alleges that Defendants violated the NYLL by failing to provide Plaintiff with a detailed paystub with each payday.  (SAC, Count VI, ¶ 96.)   Section 195(3) of the NYLL requires employers to "furnish each employee with a statement with every payment of wages" indicating specific information, such as the hours worked, rates of pay, etc.  NYLL § 195(3).  In response, Defendants again argue that Defendants did, in fact, provide Plaintiff with weekly paystubs, and submit examples of these purported paystubs for the Court's consideration.  (Defs.' Br. at ECF 8-9.)  As discussed *supra*, this is not the time for the Court to consider such evidence.  *Azeez,* 2015 WL 1637871, at *2.

Accordingly, Plaintiff may proceed on Count VI of the SAC.

### III.  Defendants' Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f)

Defendants further move to strike Paragraphs 29, 30, and 31 of the SAC pursuant to Fed. R. Civ. P. 12(f).  (Defs.' Mot. To Dismiss, ¶ 3.)   To succeed on a motion to strike, the moving party has to meet a high standard to show that "no evidence in support of the allegation could be admissible."  *Lipsky*, 551 F.2d at 893; *see also Crespo,* 2002 WL 398805, at *11 (party moving to strike must show that "allegations in question can have no possible bearing on the subject matter of the litigation") (quoting *Lennon*, 63 F. Supp. 2d at 446); *OTG Brands, LLC,* 2015 WL 1499559, at *5 (a party seeking to strike allegations must show that evidence in support of the allegation

---

later motions for summary judgement.  *See Louie v. Bed Bath & Beyond, Inc.*, No. 15-CV-4438 (LDW), 2016 WL 3546333, at *2 (E.D.N.Y. June 23, 2016); *Gregory v. Stewart's Shops Corp.*, No. 7:14-CV-00033 (TJM), 2015 WL 893058, at *9 (N.D.N.Y. Mar. 2, 2015) (finding that the Court was limited to the allegations of the complaint and could not consider *acknowledgements* that plaintiffs had received the wage notices).

would be inadmissible, the allegations have no bearing on relevant issues, and permitting the allegations to stand would result in prejudice to the movant). "In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky*, 551 F.2d at 893.

Defendants argue that Paragraphs 29-31 should be stricken because Plaintiff failed to delete the portions of the FAC relating to defendants that were dismissed from this case, as directed by the Court in its April 24, 2018 Minute Order (Defs.' Br., at ECF 12), and because the allegations set forth in these paragraphs, which relate to now-dismissed defendants or other non-parties, do not confer standing on Plaintiff to sue these non-parties under a single integrated enterprise theory. (Defs.' Br., at ECF 9, 12-13; Defs.' Reply Br., Dkt. 100, at ECF 8.) The Court agrees in part.

Subsequent to its holding in *Lipsky*, the Second Circuit clarified that Rule 12(f) is "designed for excision of material from a pleading, not for dismissal of claims in their entirety." *Day v. Moscow,* 955 F.2d 807, 811 (2d Cir. 1992) (internal citation omitted); *Moses v. Apple Hosp. Reit Inc.,* No. 14-CV-3131 (DLI) (SMG), 2015 WL 1014327, at *2 (E.D.N.Y. Mar. 9, 2015). Further, "[n]otwithstanding the Second Circuit's caution to avoid tampering with complaints, in *Lipsky,* the Circuit struck portions of the complaint at issue that referenced material contained in an earlier enforcement proceeding." *Moses*, 2015 WL 1014327 at *2 (citing *Lipsky,* 551 F.2d at 892–94).

Here, the Court similarly finds that excision is warranted, to the extent that Paragraphs 29-31 reference dismissed corporate defendants and non-parties, all of whom, the Court has ruled, Plaintiff has no standing to sue.[7] *Lipsky*, 551 F.2d at 893 (striking immaterial allegations from

---

[7] (*See also, i.e.,* SAC, ¶ 67 (alleging that "Defendants and other employers" throughout New York, Massachusetts and Maryland violate state labor laws); *cf.* Court's April 24, 2018 Minute Order Entry (granting Defendants' motion to dismiss, in part, under Fed. R. Civ P.

15

complaint). While Plaintiff is entitled to allege, for jurisdictional purposes under the FLSA, that GW is a single integrated enterprise comprised of all currently named Defendants as well as other non-parties (including the dismissed defendants), no legitimate purpose is served by identifying the locations of each of the non-party entities; rather, the continuing inclusion of these non-parties serves only to create confusion as to the parties being sued in this action.[8]

However, the Court declines to strike Paragraphs 29 and 31 to the extent that they are relevant to Plaintiff's "single integrated enterprise" theory, *i.e.*, that Defendants GW and DZH operate as members of "a Chinese-American supermarket chain doing business as Great Wall Supermarket[,] also known as "GW Supermarket," and that GW Supermarket constitutes a "single integrated enterprise" comprised of over 16 GW Supermarket entities headquartered at DZH in New York. (SAC, ¶¶ 25-34; *see also id.,* ¶¶ 14-23.)[9] The Court rejects Defendants' argument that

---

12(b)(1), dismissing claims against all of the out-of-state defendants, and all corporate defendants, except GW of Flushing I, Inc., GW Supermarket of Main Street, Inc., and DZH Import & Export, Inc., for lack of Article III standing, and directing Plaintiff to "delete[] all Defendants who have been dismissed and the portions of the First Amended Complaint relating to the dismissed Defendants" in his SAC).)

[8] The Court's conclusion is informed, in part, by the history of this case and Plaintiff's counsel's lack of understanding of, or disregard for, jurisdictional limitations. (*See supra,* footnote 7.)

[9] The Court notes that, notwithstanding Plaintiff's allegations, it remains to be determined whether the single integrated enterprise theory applies under the facts of this case, and if so, the scope of that enterprise. *See Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 14-CV-5269 (ARR) (JO), 2016 WL 5092588, at *16 (E.D.N.Y. Sept. 19, 2016) (noting that the "Second Circuit does not appear to have 'expressly applied the integrated enterprise test in the FLSA context'[,]" but finding "sufficient support for its application here.") (quoting *Teri v. Spinelli,* 980 F. Supp. 2d 366, 372 n.12 (E.D.N.Y. 2013); *Coley,* 2016 WL 4179942, at *5); *see also United States v. Stanley*, 416 F.2d 317, 318 (2d Cir. 1969) (finding that for purposes of FLSA, "enterprise includes all related activities performed for a common business purpose even if performed by one or more corporate units" (internal quotation marks and citation omitted)).

For now, the Court finds that Plaintiff has sufficiently alleged facts supporting the "single integrated enterprise" theory, the test for which is: "(1) the interrelation of operations, (2)

"there is no need to invoke nonparties to reach the annual gross sales volume of $500,000 for the purposes of [FLSA] coverage, the purpose of the enterprise amendment, because that requirement is satisfied without them." (Defs.' Br. at ECF 13.) This argument simply does not meet the "high standard" required on a motion to strike under Fed. R. Civ. P 12(f), in that it fails to demonstrate that all of the allegations in Paragraphs 29-31 could "have no possible bearing" on the issue of coverage under the FLSA. *Crespo*, 2002 WL 398805, at *11; *Lennon*, 63 F. Supp. 2d at 446. While Plaintiff may allege that both GW and DZH meet the coverage amounts under FLSA (*see* SAC, ¶¶ 11, 15; *see also* FLSA, § 3(s)(1)(A), 29 U.S.C. § 203(s)(1)(A)), these allegations certainly do not preclude Plaintiff from arguing in the alternative that GW and DZH also meet the coverage amount under FLSA as a single integrated enterprise headquartered at DZH, with over 16 supermarkets under its management and control. (*See* SAC, ¶¶ 14, 15, 27, 29-31.) Thus, those portions of Paragraphs 29 and 31 that are relevant to Plaintiff's single integrated enterprise liability theory serve the purpose of putting Defendants on notice of that theory and are not prejudicial to Defendants. *See OTG Brands, LLC*, 2015 WL 1499559, at *5 (citing *Lipsky,* 551 F.2d at 893); *accord, In re Fannie Mae 2008 Sec. Litig.,* 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012), *aff'd,* 525 F. App'x 16 (2d Cir. 2013).

Accordingly, the Court thus finds that (1) Paragraph 29 should be struck, except for the allegation that "GW Supermarket has sixteen (16) active supermarkets;" (2) Paragraph 30 should be struck in its entirety; and (3) Paragraph 31 should be modified to read: "All GW Supermarket

---

centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Ayala*, 2016 WL 5092588, at *16 (internal quotation marks and citation omitted).

locations are listed on GW Supermarket's website ({HYPERLINK} http://www.gw-supermarket.com/en/store-information/)."

## CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss is granted in part and denied in part, and Defendants' motion to strike is granted in part and denied in part. Plaintiff's FLSA and NYLL minimum wage claims are dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff's FLSA and NYLL unpaid overtime compensation clams, and his NYLL time-of-hire wage notice and wage statement claims, shall proceed, except that Plaintiff's overtime compensation claims shall be limited to his claim regarding the average weekly overtime of 1.5 hours that he worked in excess of the 48 hours he worked, and was adequately compensated for, each week. Plaintiff shall file a Third Amended Complaint ("TAC") in accordance with this Order, striking and modifying the pleadings accordingly, within fourteen (14) days of the issuance of this Order.

SO ORDERED.

*/s/ Pamela K. Chen*
PAMELA K. CHEN
United States District Judge

Dated: January 9, 2019
      Brooklyn, New York