DEFENDANTS' L.R. 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiff, by his Third Amended Complaint ("TAC"), seeks payment for an average of 1.5 hours of overtime work per week in excess of 8 hours of overtime work per week.

*Evidence:*

> [TAC para.] 51. Throughout his employment, Plaintiff HUANG was typically required to stay after and work an additional ten (10) to thirty (30) minutes per day, for fifteen (15) minutes on average each day for six (6) days for approximately an additional one and one half (1.5) hours per week. This time was not recorded on his time punch cards.

> [TAC para.] 57. Plaintiff HUANG was not paid for his time worked greater than forty-eight (48) hours every payday.

> [TAC, Count I, para.] 76. Defendants' failure to pay Plaintiff and the FLSA Collective overtime for on average one and one-half (1.5) of the hours he worked each week violated the FLSA.

> [TAC, Count I, para.] 77. At all relevant times, Defendants had, and continue to have, a policy and practice of refusing to pay overtime at the statutory rate to Plaintiff and the Collective Action Members for all hours worked in excess of forty (40) per workweek, in particular on average one and one-half (1.5) of the hours he worked overtime each week . . . .

> [TAC, Count II para.] 83. At all relevant times, Defendants had a policy and practice of refusing to pay overtime at one and one half times (1.5x) Plaintiffs' and the Class Members' regular hourly rate or the minimum wage, whichever is greater, for all of the hours Plaintiff worked in excess of forty (40), in particular on average one and one-half (1.5) hours each week.

2. Plaintiff is limited by an order of the Court to claiming overtime compensation for an average of 1.5 hours of overtime work per week in excess of 8 hours of paid-for overtime work per week.

*Evidence:*

> . . . Plaintiff has no overtime claim with respect to the first eight hours of overtime he worked each week, because, as Plaintiff himself states, he was paid $16.50/hour for those eight hours (SAC, ¶ 51), which is equal to 1.5 times his regular pay rate of $11/hour.
>
> . . . Plaintiff's FLSA and NYLL overtime compensation claims . . . will proceed, but only as to his claim of working an average of 1.5 hours beyond his 48 hours of work each week.
>
> . . .
>
> . . . Plaintiff's overtime compensation claims shall be limited to his claim regarding the average weekly overtime of 1.5 hours that he worked in excess of the 48 hours he worked, and was adequately compensated for, each week.

Memorandum and Order, January 8, 2019, ECF#101, pp. 12, 18.

3. Plaintiff admits he was paid for the first 8 hours of overtime he worked per week.

*Evidence:*

> [TAC, para. 57] . . . Plaintiff HUANG was not paid for his time worked greater than forty-eight (48) hours every payday.

4. Only Counts I and II for the corporate defendants' alleged failure to pay overtime compensation are left in the case.

*Evidence: ECF* #129; ECF #130.

5. No persons have opted-in under the FLSA and no class has been certified.

*Evidence:* ECF docket.

6. The checks and checkstubs have been authenticated by Louis Miu, GW of Flushing I, Inc.'s accountant, who prepared them.

*Evidence:* Declaration of Louis Miu and attached Exhibit A.

7. Plaintiff, at his deposition on September 10, 2019, authenticated the checks and paystubs which defendant GW of Flushing I, Inc. delivered to him on each weekly payday.

*Evidence:*

Q Mr. Huang, let me show you a document that's marked Defendants' Exhibit B, and they're Bates numbered from GW7 to GW236, which is 230

pages. Could you look at the pages in Defendants' Exhibit B and tell me if you've ever seen those before.

A Yes. Yes, I saw them. This was check stub.

Q Are they also checks?

A It should be like this. On the top part actually was pay stub and the lower part was the actual check.

Q What did you do with the actual check?

A To deposit it into my account. This pay stub or check stub came with the actual check.

Q You were given the documents that you're looking at in this Exhibit B?

A You're talking about this part, right?

Q Yes.

A When they gave it to me, this was a part of it and then it came with an actual check.

Q Did the actual check look like the top part of this document, where your name is?

A Yeah. Yes.

Q The only difference is the check that you got had a signature on it on the signature line?

A Yes, that's right. That's right. Yes,

Transcript of the deposition testimony of plaintiff, Exhibit B to the Shields declaration, pp. 19-21; Shields Declaration, para. 4 and Exhibit C.

8. The amounts of the checks in Exhibit A to the Miu declaration were paid to plaintiff.

*Evidence:* Transcript of the deposition testimony of plaintiff, Exhibit B to the Shields declaration, pp. 19-21.

9. Plaintiff was paid for an average of 11.47 overtime hours, or an average of 3.47 weekly overtime hours in excess of the paid 8 hours of weekly overtime—more than plaintiff asks for in his Third Amended Complaint.

*Evidence:* Checks and checkstubs, Exhibit A to the Miu Declaration; Spreadsheet, Exhibit D to the Shields Declaration; Defendants' Facts 1 and 2 *supra.*

10. Out of 230 work weeks, plaintiff worked 9.5 or fewer overtime hours per week in 56 work weeks and more than 9.5 overtime hours per week in 174 work weeks.

*Evidence:* Checks and checkstubs, Miu Declaration, Exhibit A; Spreadsheet, Exhibit D to the Shields Declaration.

11. The overtime rates at which plaintiff was paid equaled or exceeded 1.5 times the minimum wage required by New York State. For example, plaintiff was paid overtime at the following overtime rates based on the regular rates in parentheses: 2011-2013: 10.88 (7.25); 2014: 12.00 (8.00); 2015: 13.88 (9.25, higher

than the minimum rate of 8.75); 2016: 13.88 (9.75, higher than the minimum rate of 9.00); 2017: 16.50 (11.00).

*Evidence:* Checks and checkstubs, Exhibit A to the Miu Declaration; labor.ny.gov/minimum-wage-shtm; labor.ny.gov/minimum-wage-lookup/.

12. Defendants' counsel produced to plaintiff's counsel on June 24, 2018, the paychecks and paystubs attached as Exhibit A to the Miu Declaration.

*Evidence:* Shields Declaration, para. 6.

13. Defendants' counsel, in December of 2019, prepared and produced to plaintiff's attorneys the spreadsheet attached as Exhibit D to the Shields Declaration.

*Evidence:* Shields Declaration, para. 5.

Dated: March 16, 2020

Respectfully submitted,

*s/ Carolyn Shields*

Carolyn Shields
Liu & Shields LLP
41-60 Main Street, Suite 208A
Flushing, NY 11355
Tel: 718-463-1868
Email: shieldscj524@gmail.com
Attorneys for GW of Flushing I, Inc. and DZH Import & Export Inc., Defendants