# EXHIBIT A

TROY LAW, PLLC
*Attorneys for Plaintiffs proposed FLSA collective,*
*and potential Rule 23 Class*
John Troy (JT 0481)
41-25 Kissena Boulevard, Suite 119
Flushing, NY 11355
Tel: (718) 762-1324

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

FANGRUI HUANG,
*on behalf of himself and others similarly situated,*
Plaintiff,

v.

GW OF FLUSHING I, INC.
d/b/a GW Supermarket of Flushing 2,
DZH IMPORT & EXPORT INC.,
LI HUI ZHANG
a/k/a Lihui Zhang, and
SAILU PAN
a/k/a Sai Lu Pan
a/k/a Sai Pan Lu,
Defendants.

---------------------------------------------------------------x

**Case No. 17-cv-3181**

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION**
**AND FED. R. CIV. P. 23**
**CLASS ACTION**

**THIRD AMENDED**
**COMPLAINT**

Plaintiff FANGRUI HUANG (hereinafter referred to as "Plaintiff"), on behalf of himself and others similarly situated, by and through his attorneys, Troy Law, PLLC, hereby brings this complaint against Defendants GW OF FLUSHING I, INC. d/b/a GW Supermarket of Flushing 2, DZH IMPORT & EXPORT INC., LI HUI ZHANG a/k/a Lihui Zhang, and SAILU PAN a/k/a Sai Lu Pan a/k/a Sai Pan Lu, (hereinafter referred to as "Defendants").

## INTRODUCTION

1. This action is brought by Plaintiff, on behalf of himself as well as other similarly situated employees against Defendants for violations of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201 *et seq.* and of the New York Labor Law ("NYLL") N.Y. C.L.S. Labor, arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2. Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiff, overtime for all hours worked in excess of forty (40) in each workweek.

3. Defendants willfully failed to record all of the time that Plaintiff and similarly situated employees work or worked, including time worked in excess of forty (40) hours per week.

4. Plaintiff alleges pursuant to the FLSA, that he is entitled to recover from the Defendants: (1) unpaid overtime, (2) liquidated damages; (3) prejudgment and post-judgment interest; and/or (4) attorneys' fees and costs.

5. Plaintiff further alleges pursuant to the NYLL§ 650 *et seq.*, that he is entitled to recover from the Defendants: (1) unpaid overtime, (2) liquidated damages equal to one hundred percent (100%) of the unpaid overtime under the New York Wage Theft Prevention Act 2009 N.Y. S.N. 8380, (3) up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday; (4) up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide paystubs that accurately and truthfully listed each employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from the employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day; (5) nine percent (9%) simple prejudgment interest as provided by the New York Civil Practice Law and Rules ("CPLR") N.Y.C.P.L.R. § 5004, (6) post-judgment interest, and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

6. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

**PLAINTIFF**

8. Plaintiff FANGRUI HUANG (“HUANG”) was employed by GW OF FLUSHING I, INC. d/b/a GW Supermarket of Flushing 2, located at 137-61 Northern Boulevard, Flushing, NY 11354 as a packer.

**DEFENDANTS**

***Corporate Defendants***

9. Defendant GW OF FLUSHING I, INC. d/b/a GW Supermarket of Flushing 2 is a domestic business corporation organized under the laws of the State of New York with a principal address c/o DZH Real Estate LLC, 1300 Metropolitan Avenue, Brooklyn, NY 11237.

10. GW OF FLUSHING I, INC. d/b/a GW Supermarket of Flushing 2 operates a supermarket located at 137-61 Northern Boulevard, Flushing, NY 11354.

11. GW OF FLUSHING I, INC. d/b/a GW Supermarket of Flushing 2 is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

12. GW OF FLUSHING I, INC. d/b/a GW Supermarket of Flushing 2 purchased and handled goods moved in interstate commerce.

13. Defendant DZH IMPORT & EXPORT INC. was a domestic business corporation organized under the laws of the State of New York with a principal address 1300 Metropolitan Avenue, Brooklyn, NY 11237.

14. DZH IMPORT & EXPORT INC. operated, among other things, as the central corporate office for the supermarkets doing business as GW Supermarket, and is listed as the mailing address for all GW Supermarket locations on the GW Supermarket website's "Contact Us" page, http://www.gw-supermarket.com/en/contact-us/.

15. DZH IMPORT & EXPORT INC. was a business engaged in interstate commerce that had gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

16. DZH IMPORT & EXPORT INC. purchased and handled goods moved in interstate commerce.

17. At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Corporate Defendants doing business as GW Supermarket.

***Individual Defendants***

18. The Individual Defendants are officers, directors, managers, and/or majority shareholders or owners of the Corporate Defendants and being among the ten largest shareholders, are individually responsible for unpaid wages under the New York Business Corporation Law, N.Y. C.L.S. BSC § 630(a) and New York Limited Liability Company Law, N.Y. C.L.S. LLC § 609(c).

19. LI HUI ZHANG a/k/a Lihui Zhang (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at GW OF FLUSHING I, INC. d/b/a GW Supermarket of Flushing 2 and DZH IMPORT & EXPORT INC.

20. LI HUI ZHANG a/k/a Lihui Zhang is the Chief Executive Officer of GW OF FLUSHING I, INC. d/b/a GW Supermarket of Flushing 2, and DZH IMPORT & EXPORT INC.

21. LI HUI ZHANG a/k/a Lihui Zhang acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL, N.Y. C.L.S. Labor § 2, and regulations promulgated thereunder, and is jointly and severally liable with GW OF FLUSHING I, INC. d/b/a GW Supermarket of Flushing 2 and DZH IMPORT & EXPORT INC.

22. SAILU PAN a/k/a Sai Lu Pan a/k/a Sai Pan Lu (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules and conditions of employment, (3) determined employee rates and methods of payment, and (4) maintained employee records at GW OF FLUSHING I, INC. d/b/a GW Supermarket of Flushing 2 and\ DZH IMPORT & EXPORT INC.

23. SAILU PAN a/k/a Sai Lu Pan a/k/a Sai Pan Lu acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d), and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as NYLL, N.Y. C.L.S. Labor § 2, and regulations promulgated thereunder, and is jointly and severally liable with GW OF FLUSHING I, INC. d/b/a GW Supermarket of Flushing 2 and DZH IMPORT & EXPORT INC.

24. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or conditions have been waived.

## STATEMENT OF FACTS

***Corporate Defendants Constitute a Single Integrated Enterprise***

25. Corporate Defendants GW OF FLUSHING I, INC. d/b/a GW Supermarket of Flushing 2 and DZH IMPORT & EXPORT INC. are members of a Chinese-American supermarket chain

doing business as Great Wall Supermarket, also known as GW Supermarket.

26. At all relevant times herein, GW Supermarket, was, and continues to be, single integrated enterprise with a high degree of interrelated and unified operation, a common management, centralized control of labor relations, common ownership, common control, a common website, a common business purposes and interrelated business goals.

27. GW Supermarket is an enterprise engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

28. GW Supermarket produces, purchases and handles goods moved in interstate commerce.

29. GW Supermarket has sixteen (16) active supermarkets, including:

a. Four (4) supermarkets in New York State:

i. 144-50 Northern Boulevard, Flushing, NY 11354;

ii. 137-45/61 Northern Boulevard, Flushing, NY 11354;

iii. 41-79 Main Street, Flushing, NY 11355;

iv. 59-16 99th Street, Queens, NY 11368;

b. Four (4) supermarkets in California:

i. 8815 E Valley Boulevard, Rosemead, CA 91770;

ii. 421 N Atlantic Boulevard, Monterey Park, CA 91754;

iii. 8150 Garvey Avenue, #121, Rosemead CA 91770;

iv. 18475 Colima Road, Rowland Heights, CA 91748;

c. One (1) supermarket in Virginia:

i. 2982 Gallows Road, Falls Church, VA 22042;

d. One (1) supermarket in Georgia:

i. 2300 Pleasant Hill Road, Duluth, GA 30096;

Case 1:17-cv-03181-PKC-JO Document 103 Filed 02/08/19 Page 7 of 22 PageID #: 1198

e. Three (3) supermarkets in Maryland:

i. 700 Hungerford Drive, Rockville, MD 20850;

ii. 19721 N Frederick Road, Germantown, MD 20876;

iii. 5510 Baltimore National Pike, Catonsville, MD 21228;

f. One (1) supermarket in Texas:

i. 9889 Bellaire Boulevard, Building B, Houston TX 77036;

g. Two (2) supermarkets in Massachusetts:

i. 109 Lincoln Street, Boston, MA 02111;

ii. 50 Herald Street, Boston, MA 02116.

30. GW Supermarket has formerly operated at least (1) additional supermarket, including:

a. 77-00 Queens Blvd, Queens, NY 11373.

31. All the aforementioned GW Supermarket locations are listed on G W Supermarket's website (http://www.gw-supermarket.com/en/store-information/).

32. GW Supermarket maintains a single, centralized "Careers" page on its website (http://www.gwcart.com/en/career/) where applicants are informed of positions currently open at various GW locations.

33. Job applicants and others looking to contact GW Supermarkets are encouraged to do so through a centralized email system, or at DZH Import & Expert Inc.'s 1300 Metropolitan Avenue address, or using telephone or fax numbers associated with 1300 Metropolitan Avenue.

34. Customers may purchase goods from www.gmarts.com, which are then processed and shipped from the local GW Supermarket.

***Defendants committed the following alleged acts knowingly, intentionally and willfully against the Plaintiff, the FLSA Collective, and the Class***

35. While employed by Defendants, Plaintiff was not exempt under federal and state laws requiring employers to pay employees overtime.

36. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff and similarly situated employees their lawful overtime of one and one half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

37. At all relevant times, Defendants knowingly and willfully failed to keep full and accurate records of Plaintiff's hours worked and wages paid.

38. Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for wage violations.

39. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with Time of Hire Notices reflecting rates of pay and payday as well as paystubs that listed the employee's name, the employer's name, the employer's address and telephone number, the employee's rate or rates of pay, any deductions made from employees' wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

40. Defendants knew that the nonpayment of wages for all hours worked and the nonpayment of wages at one and one half time (1.5x) employees' regular rates would financially injure Plaintiff and similarly situated employees, and violate state and federal laws.

41. At all relevant times, Defendants failed to post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, and pay day.

***Plaintiff FANGRUI HUANG***

42. From on or about May 2, 2011, to February 18, 2017, Plaintiff FANGRUI HUANG worked for GW OF FLUSHING I, INC. d/b/a GW Supermarket of Flushing 2, located at 137-61 Northern Boulevard, Flushing, NY 11354 as a packer.

43. At the time he was hired, and at no time thereafter, Plaintiff HUANG was not given a written notice in his primary language (Chinese) regarding all of the following items: his rate or rates of pay and basis thereof; allowances claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any “doing business as” names used by the employer; the physical and mailing addresses of the employer's main office or principal place of business; and the telephone number of the employer. Specifically, he was given a written notice that listed only: his straight-time pay rate but not his overtime pay rate; that a $6.00 meal allowance per meal would be taken; and that his pay would be weekly but not what his regular pay day would be.

44. From on or about January 1, 2017 to February 18, 2017, Plaintiff HUANG recalls that his regular work schedule ran from 7:30 am to 12:00 pm, then from 12:30 pm to 3:00 pm, and finally from 3:30 pm to 4:30 pm, for eight (8) hours per day, six days per week.

45. From on or about May 2, 2011 through about the first year of his employment, Plaintiff HUANG recalls that his regular work schedule ran for about eight (8) hours per day, six days per week.

46. From on or about May 2012 through about November 2012, Plaintiff HUANG recalls that his regular work schedule ran for about nine (9) hours per day, six days per week.

47. From on or about December 2012 through about December 2013, Plaintiff HUANG recalls that his regular work schedule ran for about nine and one-quarter (9.25) hours per day, six days per week.

48. From on or about January 2014 through about August 2015, Plaintiff HUANG recalls that his regular work schedule ran for about eight and three-quarters (8.75) hours per day, six days per week.

49. From on or about September 2015 through about December 2016, Plaintiff HUANG recalls that his regular work schedule ran for about eight and one-half (8. 5) hours per day, six days per week.

50. Plaintiff HUANG was required to punch in when he arrived to work, to punch out for lunch, to punch in again after lunch, to punch out again for teatime, to punch in again after teatime, and finally to punch out at the end of his scheduled shift.

51. Throughout his employment, Plaintiff HUANG was typically required to stay after and work an additional ten (10) to thirty (30) minutes per day, for fifteen (15) minutes on average each day for six (6) days for approximately an additional one and one half (1.5) hours per week. This time was not recorded on his time punch cards.

52. During the course of his employment, Defendants willfully failed to keep records of all of Plaintiff HUANG's hours worked.

53. Plaintiff HUANG was paid at the following rates for the following times:

a. From on or about May 2, 2011 to December 31, 2013, a straight-time rate of seven dollars and twenty-five cents per hour ($7.25/hr);

b. From on or about January 1, 2014 to December 31, 2014, a straight-time rate of eight dollars per hour ($8.00/hr);

c. From on or about January 1, 2015 to December 31, 2016, a straight-time rate of nine dollars and twenty-five cents per hour ($9.25/hr);

d. From on or about January 1, 2017 to February 18, 2017, a straight-time rate of elven dollars per hour ($11.00/hr).

54. Plaintiff HUANG was paid by check, and received pay statements with his pay, but these pay statements were not always accurate as to the number of overtime hours he worked.

55. Plaintiff HUANG's paystubs would generally, with rare exceptions, list the following overtime hours, for the following periods:

a. From on or about May 2, 2011 to February 8, 2012: eight (8) overtime hours each week;

b. From on or about February 9, 2012 to September 19, 2012: did not receive paystubs;

c. From on or about September 20, 2012 to November 21, 2012: fourteen (14) overtime hours each week;

d. From on or about November 22, 2012 to December 31, 2013: fifteen and one-half (15.5) overtime hours each week;

e. From on or about January 1, 2014 to August 12, 2015: twelve and one-half (12.5) overtime hours each week;

f. From on or about August 13, 2015 to December 28, 2016: eleven and one-half (11.5) overtime hours each week; and

g. From on or about December 29, 2016 to February 18, 2017: eight (8) overtime hours each week.

56. For the overtime hours listed on his paystubs, Plaintiff HUANG was paid at a rate 1.5 times his straight-time rate.

57. However, Plaintiff HUANG was not paid for his time worked greater than forty-eight (48) hours every payday.

58. In other words, Plaintiff HUANG was not paid at all for the time that he stayed after regular work hours as a packer at the supermarket.

59. For the following pay periods, Plaintiff HUANG received the following payments of overtime in cash:

a. For the period ending May 23, 2012, $116.00 for ten overtime hours (10 h * $7.25/h * 1.5 + $7.25);

b. For the period April 24, 2013, $126.88 for eleven overtime hours (11 h * $7.25/h * 1.5 + $7.25);

c. For the period ending December 30, 2015, $69.00 for five overtime hours (5 h * $9.25/h * 1.5);

d. For the period ending January 20, 2016, $28.00 for two overtime hours (2 * $9.25/h * 1.5);

e. For the period ending April 13, 2016, $69.00 for five overtime hours (5 h * $9.25/h * 1.5);

f. For the period ending April 27, 2016, $28.00 for two overtime hours (2 * $9.25/h * 1.5); and

g. For the period ending June 1, 2016, $69.00 for five overtime hours (5 h * $9.25/h * 1.5).

60. For the following pay periods, Plaintiff HUANG's paystubs had already shown the following amount of overtime hours worked and paid for by check:

a. For the period ending May 23, 2012, no paystub available;

b. For the period April 24, 2013, 15.5 overtime hours;

c. For the period ending December 30, 2015, 11 overtime hours;

d. For the period ending January 20, 2016, 11 overtime hours;

e. For the period ending April 13, 2016, 11 overtime hours;

f. For the period ending April 27, 2016, 11 overtime hours; and

g. For the period ending June 1, 2016, 11 overtime hours.

61. Throughout his employment, Plaintiff's pay stubs did not state his actual hours worked.

62. During the course of his employment, Plaintiff HUANG was not paid at least one and one-half (1.5x) the minimum wage or his calculated hourly wage, whichever was greater, for all hours worked in excess of forty (40) per week.

63. Throughout his employment, Plaintiff HUANG was not given statements with his pay listing all of the following: the dates of work covered by that payment of wages; his name; the name of the employer; the address and phone number of the employer; his rate or rates of pay and basis thereof; his gross wages; his deductions; allowances, if any, claimed as part of the minimum wage; net wages; his regular hourly rate or rates of pay; his overtime rate or rates of pay; his number of regular hours worked, and his number of overtime hours worked.

## COLLECTIVE ACTION ALLEGATIONS

64. Plaintiff brings this action individually and on behalf of all other current and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and who were not compensated at least the hourly minimum wage and/or overtime for all hours worked in excess of forty (40) per week (the "Collective Action Members.")

## CLASS ACTION ALLEGATIONS

65. Plaintiff brings his NYLL claims pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23, on behalf of all non-exempt personnel employed by Defendants in their New York

locations on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "New York Class Period").

66. All said persons, including Plaintiff, are referred to herein as the "Class."

67. The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

***Numerosity***

68. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number can be based are presently within the sole control of the Defendants, upon information and belief, there are more than seventy (70) members of the Class.

***Commonality***

69. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiff and the Class members within the meaning of the NYLL;

b. Whether Plaintiff and the Class members were entitled to and paid overtime under the NYLL;

c. Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff's and the Class members' employment, or timely thereafter;

d. Whether Defendants provided paystubs detailing the rates of pay and credits taken toward the minimum wage to Plaintiff and the Class members each payday; and

e. At what common rate, or rates subject to a common method of calculation were and are Defendants required to pay the Class members for their work.

***Typicality***

70. Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate policies of Defendants, as alleged herein, of failing to pay minimum wage and/or overtime. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

***Adequacy***

71. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing Plaintiff in both class action and wage-and-hour employment litigation cases.

***Superiority***

72. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate

Case 1:17-cv-03181-PKC-JO Document 103 Filed 02/08/19 Page 16 of 22 PageID #: 1207

defendants. Class action treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common class-wide relief. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

73. Upon information and belief, Defendants and other employers throughout the state of New York violate the NYLL, employers throughout the state of Massachusetts violate the MAGL, and employers throughout the state of Maryland violate the MD WPS. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the

complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

**<u>STATEMENT OF CLAIMS</u>**

**COUNT I.**
**[Violations of the Fair Labor Standards Act—Nonpayment of Overtime Brought on behalf of the Plaintiff and the FLSA Collective]**

74. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

75. The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for such employment at a rate not less than one and one half times (1.5x) the regular rate at which he is employed, or one and one half times (1.5x) the minimum wage, whichever is greater. 29 U.S.C. § 207(a).

76. Defendants' failure to pay Plaintiff and the FLSA Collective overtime for on average one and one-half (1.5) of the hours he worked each week violated the FLSA.

77. At all relevant times, Defendants had, and continue to have, a policy and practice of refusing to pay overtime at the statutory rate to Plaintiff and the Collective Action Members for all hours worked in excess of forty (40) per workweek, in particular on average one and one-half (1.5) of the hours he worked overtime each week, which violated and continues to violate the FLSA, 29 U.S.C §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

78. The FLSA and supporting regulations require employers to notify employees of the requirements of the employment law. 29 C.F.R. § 516.4.

79. Defendants willfully failed to notify Plaintiff and the FLSA Collective of the requirements of their employment laws in order to facilitate their exploitation of Plaintiff's and the FLSA Collective Members' labor.

80. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the Collective Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known that failing to do so would financially injure Plaintiff and the Collective.

**COUNT II.**
**[Violations of the New York Labor Law—Nonpayment of Overtime Brought on behalf of the Plaintiff and the Rule 23 Class]**

81. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

82. After April 9, 2011, under the New York Wage Theft Prevention Act 2009 N.Y. S.N. 8380, an employer who fails to pay overtime shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to one hundred percent (100%) of the shortfall plus interest.

83. At all relevant times, Defendants had a policy and practice of refusing to pay overtime at one and one half times (1.5x) Plaintiffs' and the Class Members' regular hourly rate or the minimum wage, whichever is greater, for all of the hours Plaintiff worked in excess of forty (40), in particular on average one and one-half (1.5) hours each week.

84. Defendants' failure to pay overtime for all hours worked in excess of forty (40) violated the NYLL.

85. Defendants' failure to pay overtime for all hours worked in excess of forty (40) was not in good faith.

**COUNT III.**
**[Violations of the New York Labor Law—Failure to Provide Time of Hire Wage Notice Brought on behalf of the Plaintiff and the Rule 23 Class]**

86. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

87. NYLL requires employers to provide written notice of: the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances clamed, if any, as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer, the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer. N.Y. C.L.S. Labor § 195-1(a).

88. Defendants willfully failed to provide notice of all of the above items to employees in violation of NYLL, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle, and rate of overtime on his or his first day of employment.

89. Defendants not only did not provide notice to each employee at time of hire, but failed to provide notice even after the fact.

90. Due to Defendants' violations of NYLL, Plaintiffs are entitled to recover from Defendants, jointly and severally, fifty dollars ($50.00) for each workday that the violation occurred or continued to occur, up to five thousand dollars ($5,000.00) for each Plaintiff, together with costs and attorneys' fees pursuant to N.Y. C.L.S. § 198(1-b).

**COUNT IV.**
**[Violations of the New York Labor Law—Failure to Provide Pay Stub**
**Brought on behalf of the Plaintiff and the Rule 23 Class]**

91. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

92. NYLL requires employers to provide detailed paystub information to employees every payday. N.Y. C.L.S. Labor § 195-1(d).

93. Defendants have failed to make a good faith effort to comply with the NYLL with respect to the compensation of each Plaintiff, and did not provide complete and accurate paystubs on or after each Plaintiff's payday.

94. Due to Defendants' violations of NYLL, Plaintiffs are entitled to recover from Defendants, jointly and severally, two hundred fifty dollars ($250.00) for each workday that the violation occurred or continued to occur, up to five thousand dollars ($5,000.00) for each Plaintiff, together with costs and attorneys' fees pursuant to N.Y. C.L.S. § 198(1-b).

## PRAYER FOR RELIEF

95. WHEREFORE, Plaintiff, on his own behalf, and on the behalf of the FLSA Collective and potential Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a. Certification of this case as a collective action pursuant to FLSA;

b. Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action members;

c. A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

d. An injunction against Corporate Defendant, its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

e. An award of compensatory damages equal to the unpaid overtime due to Plaintiff and the Collective under FLSA, and to Plaintiff and the Class under the NYLL, plus punitive and/or liquidated damages equal to compensatory damages under the New York Wage Theft Prevention Act for Defendants' willful failure to pay minimum wage, overtime, and spread of hours;

f. Up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide a Time of Hire notice detailing rates of pay and payday;

g. Up to five thousand dollars ($5,000.00) per Plaintiff for Defendants' failure to provide paystubs that list employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

h. An award of costs and expenses of this action together with reasonable attorneys' fees and expert fees pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

i. An award of prejudgment and post-judgment interest;

j. Providing that if any amounts remain unpaid upon the expiration of ninety (90) days following the issuance of judgment, or ninety (90) days after expiration of the time to appeal with no appeal then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent (15%), as required by NYLL N.Y. C.L.S. Labor § 198(4).

k. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: February 3, 2019
Flushing, NY

TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA*

*Collective and potential Rule 23 Class*

/s/ John Troy

John Troy (JT 0481)
41-25 Kissena Boulevard, Suite 119
Flushing, NY 11355
Tel (718) 762-1324
johntroy@troypllc.com