UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
FANGRUI HUANG, on behalf of himself and
others similarly situated,

                        Plaintiff,

          - against -

GW OF FLUSHING I, INC. d/b/a GW
Supermarket of Flushing 2, and DZH IMPORT
& EXPORT INC.,

                       Defendants.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-3181 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

Defendants GW of Flushing I, Inc. d/b/a GW Supermarket of Flushing 2 ("GW Supermarket") and DZH Import & Export, Inc. ("DZH"), bring this motion for summary judgment seeking dismissal of Plaintiff Fangrui Huang's unpaid overtime claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206(a), and New York Labor Law ("NYLL") § 663. For the reasons stated herein, Defendants' motion is granted in its entirety and this case is dismissed.

## BACKGROUND

### I.    Relevant Factual Background

Plaintiff was employed as a packer at GW Supermarket, located in Queens, New York, for approximately six years from 2011 until 2017. (Defendants' Supplemental 56.1 Statement ("Defs.' 56.1 Supp.")[1], Dkt. 138-1, ¶ 15; Huang Deposition, Exhibit B to the Shields Declaration

---

[1] Unless otherwise noted, a standalone citation to a party's 56.1 statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citation to a 56.1 statement incorporates by reference the documents cited therein; where relevant, however, the Court may cite directly to an underlying document. The Court has deemed facts averred in a party's 56.1 statement to which the opposing party cites no admissible evidence in rebuttal as undisputed. *See Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 12, 2012) ("Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by

1

("Huang Dep."), Dkt. 133-7, at 6:12–21.) During that time, he worked in the vegetable department. (Defs.' 56.1 Supp., Dkt. 138-1, ¶ 15.) Plaintiff's supervisor changed multiple times throughout the course of his employment at GW Supermarket. (Huang Dep., Dkt. 133-7, at 17:16–17.) From approximately 2014 onward, his supervisor was Xu Xiao Feng,[2] to whom Plaintiff would give a ride to and from work three times a week. (*Id.* at 17:20–21; 31:16–19.)

According to Plaintiff, he "worked 6 days per week [at GW Supermarket], and was scheduled to work 8 hours per day—7:00 AM to 4:00 PM, with 2 half-hour breaks, each day." (Plaintiff's Response to Defendants' Supplemental 56.1 Statement ("Pl.'s 56.1 Supp."), Dkt. 139, at ECF[3] 3, ¶ 2; *see also* Huang Dep., Dkt. 133-7, at 25:8–10, 29:4–9.) Plaintiff generally clocked in when he arrived in the morning, clocked out for lunch (and then back in), and then clocked out again when he left for the day. (Huang Dep., Dkt. 133-7, at 29:4–9.) Plaintiff was paid at an hourly rate of $7.25/hour starting in 2011, which increased over time to $11/hour by the time Plaintiff left GW Supermarket in 2017. (Defendants' 56.1 Statement, Dkt. 133-1, ¶ 11.) Plaintiff regularly worked overtime, and the parties agree that he was compensated for his recorded overtime at a rate of 1.5 times his regular hourly wage. (Plaintiff's Opposition to Defendants' 56.1 Statement, Dkt. 134-1, ¶ 9.)

---

general reference to an exhibit or affidavit does not specifically controvert anything." (emphasis in original)). Additionally, to the extent a party's 56.1 statement "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts," the Court has disregarded the statement. *Risco v. McHugh*, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012).

[2] Following the Chinese naming convention, the Court understands Xu Xiao Feng's last name to be Xu, and will refer to him by his last name, Xu. (*See* Huang Dep., Dkt. 133-7, at 17:20–18:3.)

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Plaintiff, however, testified that he was nonetheless underpaid in two[4] main ways: (1) he often clocked out for lunch, but worked through part of his break[5,6] (*see* Huang Dep., Dkt. 133-7, at 31:8–9, 40:21–23); and (2) "in some cases, after [he] clocked out around 4, [he] went back to the room [*i.e.*, his work station] and [] spent 10 or 15 minutes to tidy the room" (*id.*, 31:12–15). According to Plaintiff, this extra time amounted to roughly an hour-and-a-half of overtime per week for which he was not compensated. (Pl.'s Opp., Dkt. 135, at 3.) Plaintiff thus claims that while, on average, he was paid for 48 hours of work per week—40 hours of regular work plus 8 hours of overtime—he in fact worked roughly 49.5 hours per week—40 hours of regular work plus 9.5 hours of overtime. (Plaintiff's Opposition to Defendants' 56.1 Statement, Dkt. 134-1, ¶¶ 1, 3.) On this issue, Defendants have produced evidence demonstrating that during the relevant time

---

[4] At his deposition, Plaintiff referred to "three" ways in which he worked uncompensated overtime, the third being his driving of his supervisor, Xu, to and from work "three days a week[.]" (Huang Dep., Dkt. 133-7, at 31:16–19.) However, because Plaintiff's motion papers do not refer to this activity as unpaid overtime work, the Court assumes that he is no longer relying on it as a basis for his overtime claims. (*See* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp."), Dkt. 135, at 3–4; Plaintiff's Supplemental Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Supp. Opp."), Dkt. 140, at ECF 1–2.) The Court is also mindful of "[t]he general rule . . . that the FLSA does not treat ordinary home-to-job-site travel as compensable." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 360 (2d Cir. 2011).

[5] The Court notes that neither Plaintiff's Third Amended Complaint nor his initial briefing on Defendants' summary judgment motion makes reference to Plaintiff's working through his lunch break as a source of uncompensated overtime. (*See generally* Third Amended Complaint ("TAC"), Dkt. 103; Pl.'s Opp., Dkt. 135.)

[6] Plaintiff was inconsistent at his deposition, and the briefing is also inconsistent, as to the length of Plaintiff's lunch break and the time he spent working during that break. (*Compare* Huang Dep., Dkt. 133-7, at 31:8–9 ("I had only used 20 minutes of my break while I spent the rest of the time working."), *with id.* at 40:21–23 ("(If I had a 30 minute break, I spent only 10 minutes for my lunch and I spent the rest of the 20 minutes working.").) Plaintiff also referred to a "tea" break that he was allowed and sometimes took, although he could not remember whether he clocked out for those breaks. (Huang Dep., Dkt. 133-7, at 29:17–20.)

frame, Plaintiff was paid for an average of 11.47 hours of overtime per week. (Defendants' 56.1 Statement, Dkt. 133-1, ¶ 9.)

## II.     Procedural History

The procedural history of this case is lengthy. Plaintiff filed this action on May 25, 2017, on behalf of himself and others similarly situated, alleging a wide array of wage-and-hour claims against 18 defendants in multiple states. The original Complaint included: two counts of FLSA violations, one for non-payment of overtime and the other for failure to pay the minimum wage; one count of federal tax code violations for filing fraudulent returns; five counts of NYLL violations; one count of New York General Business Law violations; two counts of Massachusetts General Law violations; and two counts of Maryland Labor and Employment Law violations. (Dkt. 1, ¶¶ 122–79.)

At a pre-motion conference on a proposed motion to dismiss by various defendants, Plaintiff agreed to withdraw certain of his claims and file an amended complaint (*see* Dkt. 55; 12/1/17 Min. Entry), and he subsequently filed the First Amended Complaint ("FAC") on January 5, 2018 (Dkt. 69). Defendants moved to dismiss the FAC (Dkts. 82), and the Court held a conference on April 24, 2018, at which it granted in part and denied in part Defendants' motion, dismissing all corporate defendants except GW Supermarket, DZH, and GW Supermarket of Main Street, Inc. d/b/a GW Supermarket of Flushing 3, for lack of standing, as well as several counts of the FAC (4/24/18 Min. Entry). The Court also directed Plaintiff to file a Second Amended Complaint ("SAC") reflecting the further narrowing of the lawsuit. (*Id.*)

Plaintiff filed the SAC on May 24, 2018 (Dkt. 93), and filed an amended, corrected version of the SAC on May 29, 2018 (Dkt. 94), which Defendants then moved to dismiss (Dkt. 98). On January 9, 2019, the Court granted in part and denied in part Defendants' motion, dismissing Plaintiff's minimum wage claims and ordering Plaintiff to file a Third Amended Complaint

("TAC"). (Dkt. 101.) In the end, the Court found that Plaintiff's FLSA and NYLL overtime claims could proceed "only as to his claim of working an average of 1.5 hours beyond his 48 hours of [regular and overtime] work each week." (*Id.* at 12.)

After initially failing to file the TAC by the deadline set out in the Court's January 9, 2019 Order (*see* 1/24/19 Dkt. Entry), Plaintiff filed the TAC on February 3, 2019 (Dkt. 103), and the parties then proceeded to discovery, which closed in September 2019 (Dkt. 118). The parties attempted mediation (*see* 9/12/19 Dkt. Order), but it was unsuccessful (*see* Dkts. 126, 127). After the conclusion of mediation, the Court held a pre-motion conference regarding Defendants' proposed summary judgment motion; at the conference, the Court ordered Plaintiff to, *inter alia*, submit a letter clarifying whether he was seeking to proceed with some or all of his claims, noting that Plaintiff could face sanctions if he decided to proceed with claims the Court later determined to be frivolous. (2/12/20 Min. Entry.) Plaintiff opted to maintain certain claims (Dkt. 128), but eventually dismissed the claims against Defendants Li Hui Zhang and Sailu Pan (Dkt. 130), after initially failing to file the required stipulation of dismissal by the Court's deadline (3/2/20 Dkt. Entry).

The parties completed their initial briefing on Defendants' summary judgment motion on April 15, 2020. (*See* Dkts. 133–36.) On June 16, 2020, the Court held oral argument on the motion. (6/16/20 Min. Entry.) As a result of the argument, the Court ordered supplemental briefing on:

> (1) whether Plaintiff's deposition testimony and/or any other evidence in the record supports Plaintiff's claim that he performed on average an extra 1.5 hours of uncompensated work per week beyond his recorded time, and (2) whether there is any evidence in the record to demonstrate that Defendants had actual or constructive knowledge that Plaintiff was performing uncompensated work.

(*Id.*)  The supplemental briefing was fully submitted by September 25, 2020.[7]  (Dkts. 138–42.)

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (noting that summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party.  *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (per curiam) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial.  *Spinelli v. City of New York*, 579 F.3d

---

[7] The Court recognizes that there was some ambiguity as to whether the parties were permitted to introduce additional evidence into the record as part of the supplemental summary judgment briefing.  While the Court stated at the June 16th oral argument that the parties should "cite whatever evidence [they] have that supports the additional arguments" (6/16/20 Transcript, Dkt. 142-3, 21:2–4), the minute entry from that argument directs the parties to provide supplemental briefing on "whether Plaintiff's deposition testimony and/or any other evidence *in the record* supports Plaintiff's claim that he performed on average an extra 1.5 hours of uncompensated work per week beyond his recorded time" and "whether there is any evidence *in the record* to demonstrate that Defendants had actual or constructive knowledge that Plaintiff was performing uncompensated work" (6/16/20 Min. Entry (emphasis added)).  Neither party sought to raise this issue with the Court affirmatively before briefing.  Defendants submitted additional declarations and records as part of their motion papers, some of which they had already produced in some form in discovery.  (*See* Dkt. 142-2, ¶¶ 3–5.).  Plaintiff objected to the admission of this extra evidence but did not submit any additional evidence or declarations of his own or request permission to do so.  (*See* Pl.'s 56.1 Supp., Dkt. 139, ¶¶ 14, 17–21.)  As discussed *infra*, the Court considers some of this additional evidence, which was produced in some form to Plaintiff during discovery and as to which Plaintiff has not raised a challenge based on authenticity or accuracy.

6

160, 166–67 (2d Cir. 2009); *see also Celotex*, 477 U.S. at 322–23. A mere "scintilla of evidence" in support of the non-moving party is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (alteration in original) (quoting *Anderson*, 477 U.S. at 252). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (internal quotation and emphasis omitted).

When assessing whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the non-moving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

## DISCUSSION

### I. Plaintiff's FLSA Claims Do Not Survive Summary Judgment

"To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel*, 643 F.3d at 361 (citations omitted). In this case, summary judgment for Defendants is appropriate because, as they argue, Plaintiff has failed to show that Defendants had actual or constructive knowledge that he was working the alleged 1.5 hours of additional overtime each week.

"[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours." *Lawtone-*

*Bowles v. City of New York*, No. 16-CV-4240 (AJN), 2020 WL 2833366, at *3 (S.D.N.Y. June 1, 2020) (quoting *Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 524 (2d Cir. 1998)). "Whether an employer has actual or constructive knowledge that a plaintiff worked overtime is an issue of fact." *Murray v. City of New York*, No. 16-CV-8072 (PKC), 2020 WL 615053, at *8 (S.D.N.Y. Feb. 10, 2020) (citing *Holzapfel*, 145 F.3d at 521). Courts have found that employees demonstrated constructive awareness on the part of their employers where supervisors observed the employees arriving early to prepare for work and praised the employees for that behavior, *see Perry v. City of New York*, No. 13-CV-1015 (VSB), 2018 WL 1474401, at *6 (S.D.N.Y. Mar. 26, 2018); where employees verbally alerted their supervisors that they had worked overtime, *see Kuebel*, 643 F.3d at 356–57, 365; *Seward v. Int'l Bus. Machs. Corp.*, No. 08-CV-3976 (VB), 2013 WL 142006, at *3–4 (S.D.N.Y. Jan. 2, 2013); or where "supervisors gave [employees] keys and assigned them work outside of their regular shifts [and] observed them working outside of their scheduled shifts," along with employees "inform[ing] their supervisors when they could not take meal breaks [and] when they were working overtime that was not pre-approved, had requests for overtime that was not pre-approved denied, and turned in paperwork and keys to their supervisors at times past when their scheduled shift ha[d] been completed," *Lawtone-Bowles*, 2020 WL 2833366, at *3.

Plaintiff contends that his deposition testimony proves that his supervisors were aware both that he worked when he was clocked out during his lunch hour (Supp. Opp., Dkt. 140, at ECF 4), and that he worked an extra 15 minutes most days when he cleaned his work station after clocking out (*id.* at ECF 2). Regarding his lunch break, Plaintiff stated at his deposition that "there was no so-called clocked out [for lunch]. Even if I used the clock device, I was still at my work station. They told me that I should continue my work. I followed the order and [] continued working."

8

(Huang Dep., Dkt. 133-7, at 30:5–9; *see also id.*, 28:15–20 ("There was no so-called clocked out during the lunch. You just use the clock machine. You ate at your work station. You worked at your work station. You got hurry. There was no so-called 30 minutes break or a fixed time for lunch. You got your lunch quickly and then you went back to work.").) He argues that these references demonstrate that his employers directed him to work through his lunch. (Supp. Opp., Dkt. 140, at ECF 2–4.)

But Plaintiff's statement that "they told me that I should continue my work" does not explain who "they" were (*i.e.*, whether "they" were his supervisors or coworkers), when "they" told him to continue working, and whether "they" were aware that he was clocked out while he was working. *Cf. Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 468 (S.D.N.Y. 2011) (observing that plaintiffs must demonstrate that their "individual manager[s] had actual or constructive knowledge that plaintiffs were performing off-the-clock work without proper compensation"). Nor does Plaintiff provide any specifics that might tend to bolster his claim that his supervisors were aware that he was performing uncompensated work, such as whether his supervisor worked near him during lunch. *See Edwards v. City of New York*, No. 08-CV-3134 (DLC), 2012 WL 1694608, at *4–5 (S.D.N.Y. May 15, 2012) (dismissing plaintiffs' FLSA overtime claims on summary judgment where plaintiffs made general allegations that their supervisors threw out their overtime slips, but where a plaintiff "could not identify any [supervisor] who had done so, could not recall who had told him that [supervisors] threw out overtime slips, and stated that his basis for believing that [supervisors] throw out slips was that he could 'look on [his] pay stub and see that [he] wasn't paid for the overtime'"). The vagueness and lack of substance with respect to Plaintiff's testimony is compounded by the fact that he had at least three different supervisors during the relevant period of time.

Notably, among the records introduced by Defendants as part of their supplemental briefing are punch-out records documenting that Plaintiff was paid for meal breaks on 759 days of the period at issue, and that he took uncompensated meal breaks on 554 days.[8] (Defs.' 56.1 Supp., Dkt. 138-1, ¶¶ 14, 18.)[9] To the extent these records demonstrate that Plaintiff was paid on at least some occasions when he worked through lunch, they substantially undercut Plaintiff's broad, non-specific claim that, in effect, he was never paid for working through his lunch break and that Defendants knew that. (*See, e.g.*, Huang Dep., Dkt. 133-7, at 28:15–20 ("There was no so-called clocked out during the lunch. You just use the clock machine. You ate at your work station. You worked at your work station. You got hurry. There was no so-called 30 minutes break or a fixed time for lunch. You got your lunch quickly and then you went back to work.").) Thus, even if the Court were to assume that Plaintiff's supervisors were the ones who instructed him to work through lunch, Plaintiff has provided no evidence to show that he was not paid for this work or that his employer knowingly made him work without compensation during his meal breaks. Indeed, Plaintiff has failed to produce sufficient evidence to show that this occurred on *any* day during the six-year period at issue.

Plaintiff similarly has failed to produce sufficient evidence to show that his supervisors were aware that he worked uncompensated time after clocking out at the end of the day. Plaintiff argues that his testimony that he drove his supervisor Xu home three days a week demonstrates

---

[8] Collectively, these records account for 1,313 of Plaintiff's working days, which covers more than four of the six years of Plaintiff's employment at issue (assuming a six-day work-week and no weeks off).

[9] The Court considers these records, even though they were proffered by Defendants as part of their supplemental briefing, because the records apparently were produced in at least some form in discovery (*see* Dkt. 142-2, ¶ 3) and because Plaintiff has not challenged their authenticity or accuracy.

10

that Xu was aware, and thus had constructive knowledge, that Plaintiff stayed an extra 15 minutes a day to clean his work station after clocking out. (Supp. Opp., Dkt. 140, at ECF 2.) However, Plaintiff did not testify that Xu observed Plaintiff cleaning his work station after Plaintiff had clocked out, or that Plaintiff communicated that information to Xu. Notably, Plaintiff has not submitted a declaration or testimony from Xu to that effect. The Court cannot infer without any additional evidence that Xu understood Plaintiff to be working an extra 15 minutes during this time or, for that matter, had any idea what Plaintiff was doing during this purported off-the-clock time. Nor has Plaintiff offered any explanation as to why his employer would be aware that he worked an extra 15 minutes on the days that he did not drive Xu home, or for the period before Xu became Plaintiff's supervisor in 2014. This failure to connect the dots so as to demonstrate his employer's constructive knowledge of the alleged 15 minutes of overtime he worked each day is fatal to this basis for his FLSA claim. *See Edwards*, 2012 WL 1694608, at *4–5.

In sum, Plaintiff offers nothing more than his own vague, inconsistent, and uncorroborated testimony to establish his FLSA overtime claims. Despite the forgiving standard that applies to FLSA claims, *see Kuebel,* 643 F.3d at 362 (finding that an employee's burden to show the "amount and extent of the uncompensated work . . . is not high" and a plaintiff may meet this burden "through estimates based on his own recollection" (internal quotation marks and citations omitted))[10]; no reasonable jury could find based solely on Plaintiff's testimony that his employers were aware that he was working overtime and thus that he was entitled to 1.5 hours per week of

---

[10] Once a plaintiff meets this burden, the burden shifts to the employer to produce evidence "of the precise amount of work performed or . . . evidence to negat[e] the reasonableness of the inference to be drawn from the employee's evidence." *Tapia v. BLCH 3rd Ave. LLC*, No. 14-CV-8529 (AJN), 2016 WL 4581341, at *5 (S.D.N.Y. Sept. 1, 2016) (citing *Kuebel*), *aff'd sub nom. Tapia v. BLCH 3rd Ave LLC*, 906 F.3d 58 (2d Cir. 2018) (per curiam).

overtime pay, or for that matter, to any additional overtime pay beyond what he received from his employer during the relevant time frame.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's FLSA overtime claim.

## II. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's NYLL Claims

Because the Court has dismissed Plaintiff's FLSA overtime claims, which are the only remaining claims over which it has original jurisdiction, it declines to exercise supplemental jurisdiction over the NYLL claims and dismisses those claims without prejudice. *See Clemens v. Moody's Analytics, Inc.*, 770 F. App'x 10, 12 (2d Cir. 2019) (summary order) ("If the District Court decides, after giving the parties notice and an opportunity to be heard, to decline supplemental jurisdiction over [the remaining state law] claims, it should dismiss them without prejudice[.]" (internal citation omitted)).

## CONCLUSION

For the reasons stated above, the Court grants Defendants' motion for summary judgment in its entirety. The Court therefore dismisses Plaintiff's FLSA claims with prejudice, and declines to exercise supplemental jurisdiction over his NYLL claims, which are dismissed without prejudice. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 6, 2021
      Brooklyn, New York